UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
ROBERT BASSIE,                                  :
                                                :
                        Plaintiff,              :        Case No.: _____
                                                :
        -against-                               :        **COMPLAINT**
                                                :
ANIXTER INTERNATIONAL INC.,                     :        **DEMAND FOR JURY TRIAL**
SAMUEL ZELL, WILLIAM A. GALVIN,                 :
JAMES BLYTH, FREDERIC F. BRACE,                 :
LINDA WALKER BYNOE, ROBERT J. ECK,              :
F. PHILIP HANDY, MELVYN N. KLEIN,               :
JAMIE MOFFITT, GEORLGE MUÑOZ,                   :
SCOTT R. PEPPET, VALARIE L.                     :
SHEPPARD, WILLIAM S. SIMON, AND                 :
CHARLES M. SWOBODA,                             :
                                                :
                        Defendants.             :
--------------------------------------- X

Plaintiff, Robert Bassie ("Plaintiff"), by his undersigned attorneys, alleges upon personal

knowledge with respect to himself, and information and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Anixter International Inc. ("Anixter"

or the "Company") and the members of the Company's board of directors (collectively referred to

as the "Board" or the "Individual Defendants" and, together with Anixter, the "Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Item 1015 of

Regulation M-A, 17 C.F.R. 229.1015, in connection with the proposed merger (the "Proposed

Merger") between Anixter and WESCO International, Inc. ("Wesco").

2.      On January 10, 2020, Anixter entered into an Agreement and Plan of Merger (the

"Merger Agreement") pursuant to which the Company's shareholders will receive (i) $70.00 in cash and (ii) 0.2397 shares of Wesco common stock for each share of Anixter common stock they own (the "Merger Consideration").

3.      On March 11, 2020, in order to convince Anixter shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Anixter, Wesco, and the combined company; (ii) the valuation analyses performed by Anixter's financial advisors, Centerview Partners LLC ("Centerview") and Wells Fargo Securities, LLC ("Wells Fargo" and together with the Centerview, the "Financial Advisors"), in support of their fairness opinion; and (iii) the conflicts of interest faced by Wells Fargo.

5.      The special meeting of Anixter shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Anixter's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.       Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9.       Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Anixter's common stock trades on New York Stock Exchange, which is headquartered in this District, Anixter hired Sidley Austin LLP as a legal advisor and Centerview as a financial advisor for the purposes of the Proposed Merger, both of which are also located in this District. Finally, the closing of the Merger Agreement and consummation of the Proposed Merger are scheduled to take place in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10.    Plaintiff is, and at all relevant times has been, a holder of Anixter common stock.

11.    Defendant Anixter is a distributor of network and security solutions, electrical and electronic solutions and utility power solutions. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "AXE".

12.    Individual Defendant Samuel Zell is, and has been at all relevant times, the Charmain of the Board of Anixter.

13.    Individual Defendant William A. Galvin is, and has been at all relevant times, the President, Chief Executive Officer, and a director of Anixter.

14.    Individual Defendant James Blyth is, and has been at all relevant times, a director of Anixter.

15.    Individual Defendant Frederic F. Brace is, and has been at all relevant times, a director of Anixter.

16.    Individual Defendant Linda Walker Bynoe is, and has been at all relevant times, a director of Anixter.

17.    Individual Defendant Robert J. Eck is, and has been at all relevant times, a director of Anixter.

18.    Individual Defendant F. Philip Handy is, and has been at all relevant times, a director of Anixter.

19.    Individual Defendant Melvyn N. Klein is, and has been at all relevant times, a director of Anixter.

20.    Individual Defendant Jamie Moffitt is, and has been at all relevant times, a director of Anixter

21.     Individual Defendant George Muñoz is, and has been at all relevant times, a director of Anixter

22.     Individual Defendant Scott R. Peppet is, and has been at all relevant times, a director of Anixter

23.     Individual Defendant Valarie L. Sheppard is, and has been at all relevant times, a director of Anixter

24.     Individual Defendant William S. Simon is, and has been at all relevant times, a director of Anixter

25.     Individual Defendant Charles M. Swoboda is, and has been at all relevant times, a director of Anixter

26.     The Individual Defendants referred to in ¶¶ 12-25 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Anixter they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

27.      Anixter is engaged in the distribution of enterprise cabling and security solutions, electrical and electronic wire and cable products and utility power solutions. The Company operates through three segments: Network & Security Solutions (NSS), Electrical & Electronic Solutions (EES), and Utility Power Solutions (UPS). The NSS segment's product portfolio includes access control, power, cable management, wireless, professional audio/video, voice and networking switches, and other ancillary products. The EES segment's product portfolio includes electrical and electronic wire and cable, shipboard cable, support and supply products, low-voltage cable, instrumentation cable, industrial communication and control products, security cable,

connectors, industrial Ethernet switches, and voice and data cable. The UPS segment supplies electrical transmission and distribution products, power plant maintenance, repair and operations supplies, and smart-grid products.

28.     Wesco is a distributor of products and provider of supply chain management and logistics services used in industrial, construction, utility and commercial, institutional and government (CIG) markets. The Company is a provider of electrical, industrial and communications maintenance, repair and operating (MRO) and original equipment manufacturers (OEM) products, construction materials, and supply chain management and logistics services. Its product categories include general supplies, wire, cable and conduit, communications and security, electrical distribution and controls, lighting and sustainability, and automation, controls and motors. The Company provides customers a portfolio of solutions within a range of service categories, including construction, e-commerce, energy and sustainability, engineering services, production support, safety and security, supply chain optimization, training and working capital.

29.     On January 13, 2020, Anixter and Wesco issued a joint press release announcing the Proposed Merger, which states in relevant part:

**WESCO International and Anixter International Announce Merger Agreement to Create a Premier Electrical and Data Communications Distribution and Supply Chain Services Company**

*Transaction Valued at Approximately $4.5 Billion*

*Delivers Greater Scale with Enhanced Geographic Footprint and Supply Chain Services*

*Combined Platform Provides Significant Growth and Cross-Selling Opportunities*

*Expected to Generate Over $200 Million of Annual Run-Rate Cost Synergies by End of Year Three*

*Strong Combined Cash Flows, Enhanced Margins and EPS Accretion in First Full Year of Ownership*

*WESCO to Host Conference Call Today at 8:30 a.m. ET / 7:30 a.m. CT*

PITTSBURGH and GLENVIEW, Ill.— January 13, 2020 – WESCO International, Inc. (NYSE: WCC) ("WESCO"), a leading provider of electrical, industrial, and communications MRO and OEM products, construction materials, advanced supply chain management and logistics services, and Anixter International Inc. (NYSE: AXE) ("Anixter"), a leading global distributor of Network & Security Solutions, Electrical & Electronic Solutions, and Utility Power Solutions, today announced that their boards of directors have unanimously approved a definitive merger agreement under which WESCO will acquire Anixter in a transaction valued at approximately $4.5 billion. Anixter's prior agreement to be acquired by Clayton, Dubilier & Rice, LLC ("CD&R") has been terminated, following CD&R's waiver of its matching rights under the agreement.

Under the terms of the agreement, each share of Anixter common stock will be converted into the right to receive $70.00 in cash (subject to increase as described below), 0.2397 shares of WESCO common stock and preferred stock consideration valued at $15.89, based on the value of its liquidation preference. Based on the closing price of WESCO's common stock on January 10, 2020 and the liquidation preference of the WESCO preferred stock consideration, the total consideration represents approximately $100 per Anixter share, giving effect to the downside protection described below. Based on transaction structure and the number of shares of WESCO and Anixter common stock currently outstanding, it is anticipated that WESCO stockholders will own 84%, and Anixter stockholders 16%, of the combined company.

Mr. John J. Engel, WESCO's Chairman, President, and Chief Executive Officer, commented, "The transformational combination of WESCO and Anixter will create a premier electrical and data communications distribution and supply chain services company. With increased scale and complementary capabilities, we will be ideally positioned to digitize our business, expand our extensive services portfolio and supply chain offerings, and deliver solutions to our customers whenever and wherever they need them around the globe. Given the enhanced strategic profile and competitiveness of the combined company, we are confident we will deliver improved growth and earnings, and exceptional cash flow generation. We look forward to welcoming Anixter's talented associates to the WESCO team as we embark on this next chapter and create substantial value for our stockholders, customers, suppliers, and people."

"Today's announcement is the culmination of a comprehensive process that showed, from the start, what a strong business the team at Anixter has built," said Sam Zell, Chairman of the Anixter board of directors. "The agreement with WESCO is a great result for our stockholders who will receive significant near-term value and stand to benefit from the combined company's growth and prospects."

"This is the result of a very thorough process to determine the value of our company," said Bill Galvin, Anixter's President and Chief Executive Officer. "It's also a recognition of the enormous value created by our talented people, Anixter's deep industry relationships, innovative technology solutions, and global reach. Looking ahead, the combination with WESCO will allow the combined company to build on our complementary capabilities and create new ways to serve customers and partners."

**Compelling Strategic and Financial Rationale**

- **Enhances Scale and Global Position**. The combined company will have pro forma 2019E revenues of approximately $17 billion and will be a leading electrical and data communications distributor in North America. With an extensive global reach and increased international exposure, approximately 12% of revenues will be generated outside of North America. The increased scale will enable the combined company to accelerate digitization strategies and provide a platform for growth in attractive emerging markets.

- **Broadens and Diversifies Product and Services Portfolio**. The combined company will have a comprehensive and balanced portfolio that unites WESCO's capabilities in industrial, construction, and utility with Anixter's expertise in data communications, security, and wire and cable. Bringing together the companies' complementary products, services, technologies, and solutions is expected to create significant cross-selling opportunities, strengthening the combined company's customer value proposition and supplier relationships.

- **Delivers Substantial Synergies**. WESCO expects to realize annualized run-rate cost synergies of over $200 million by the end of year three through efficiencies in corporate and regional overhead, including duplicative public company costs, branch and distribution center optimization, and productivity in procurement, field operations, and supply chain. In addition, WESCO expects incremental sales growth opportunities to result by cross-selling the companies' complementary product and services offerings to an expanded customer base and capitalizing on the enhanced capabilities across both networks.

- **Provides Immediate Earnings Accretion and Significant Free Cash Flow Generation**. The combination is expected to be accretive to WESCO's earnings in the first full year of ownership and, with the realization of synergies, substantially accretive thereafter. WESCO also expects the transaction to generate significant margin expansion and EPS growth. The combined company will have strong free cash flow generation, supporting continued investments in the business and enabling a return of

capital to stockholders in the future.

- **Ability to Rapidly De-Lever**. At closing, WESCO estimates that its pro forma leverage on a net debt to EBITDA basis will be approximately 4.5x. WESCO intends to utilize the strength of the combined company's cash flows, including significant synergies, to reduce its leverage quickly and ultimately intends to be within its long-term target leverage range of 2.0x to 3.5x within 24 months post-close.

**Consideration Terms and Financing**

Under the terms of the agreement, each share of Anixter common stock will be converted into the right to receive $70.00 in cash, 0.2397 shares of WESCO common stock, and preferred stock consideration consisting of 0.6356 depositary shares, each whole share representing a fractional interest in a newly created series of WESCO perpetual preferred stock.

The common stock consideration is subject to downside protection, such that if the average market value of WESCO common stock prior to closing is between $47.10 per share and $58.88 per share, then the cash consideration paid at closing will be increased commensurately by up to $2.82 per share, such that the reduction in value of the WESCO common stock is offset by an increase in the cash consideration within that range. $2.82 per share will also be paid if the value of WESCO stock is below $47.10.

The preferred stock consideration consists of 0.6356 depositary shares, with each whole depositary share representing a 1/1,000th interest in a share of WESCO Series A cumulative perpetual preferred stock, with a liquidation preference of $25,000 per preferred share and a fixed dividend rate calculated based on a spread of 325 basis points over the prevailing unsecured notes to be issued to effect the transaction (the dividend rate of the Series A preferred stock is expected to be approximately 9.25%). The fixed dividend rate will be subject to reset and the Series A preferred stock will have a five year non-call feature. WESCO has agreed to list the depositary shares representing the newly created series of preferred stock on the New York Stock Exchange, and the security is expected to receive equity treatment from the rating agencies. The 0.6356 depositary share to be issued in the merger per share of Anixter common stock is valued at $15.89 based on the liquidation preference of the underlying interest in the Series A preferred stock represented thereby.

Under the terms of the merger agreement, WESCO may elect to substitute additional cash consideration to reduce the amount of the preferred stock consideration on a dollar-for-dollar basis based on the value of the liquidation preference of the preferred stock consideration.

WESCO has obtained fully committed debt financing from Barclays and intends to

offer a combination of debt, equity, and equity-content securities between signing and closing to fund the required cash consideration of the transaction. At closing, WESCO estimates that its pro forma leverage on a net debt to EBITDA basis will be approximately 4.5x.

30.     The Merger Consideration represents inadequate compensation for Anixter shares. Indeed, in each of the past four quarters, Anixter has outperformed expectations by beating earning per share estimates and announcing positive financial results. Given the Company's strong recent financial performance and bright economic outlook, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**II.     The Proxy Omits Material Information**

31.     On March 11, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

32.     First, the Proxy fails to disclose critical financial projections, including the after-tax unlevered free cash flows for Anixter and Wesco. The Proxy discloses "Free Cash Flow" projections for Anixter but fail to disclose whether these are the same as the after-tax unlevered free cash flow projections utilized by the Financial Advisors in performing their discounted cash flow analyses. Similarly, the Proxy has a line item for Wesco labeled "Cash Flow" but provides not metrics for the years 2019-20204. Moreover, the projections do not even provide the necessary

line items for shareholders to calculate the after-tax unlevered free cash flow metric for themselves as defined by Wells Fargo on page 110 of the Proxy. Defendants elected to summarize *Certain Unaudited Prospective Financial Information* in the Proxy, but they failed to disclose the after-tax unlevered free cash flow projections. By disclosing certain projections in the Proxy and withholding the after-tax unlevered free cash flow projections, Defendants render the tables of projections on pages 94-95 of the Proxy materially incomplete and provide a misleading valuation picture of Anixter and Wesco.  Moreover, since both financial advisors based a significant portion of their financial analyses on the after-tax unlevered free cash flow projections, they must be disclosed to shareholders. *See infra*.

33.     Second, the Proxy fails to disclose which set of Wesco projections were used by the Financial Advisors in performing their valuation analyses. Both Financial Advisors reviewed both the Wesco prospective financial information and the adjusted Wesco Financial information, but fail to state which set it determined more reliable and thus utilized in determining the "fairness" of the Merger Consideration. When multiple sets of projections exist for the same company over the same years, care must be taken in the disclosures provided. Shareholders need to know which set of projections were used by the Financial Advisors, so that they can properly understand their fairness opinions and analyze the fairness of the Merger Consideration.

34.     Third, Centerview reviewed certain cost savings and operating synergies projected by the management of Anixter to result from the transactions contemplated by the merger agreement furnished to Centerview by Anixter for purposes of Centerview's analysis (the "Synergy Projections"). Yet the Proxy fails to disclose any Synergy Projections or pro forma projections accounting for the Synergies Projections created by Anixter management.

35.     On pages 88-92 of the Proxy, the Board listed the "material" factors they

considered in recommending Anixter shareholders vote in favor of the Proposed Merger, including: "The stock component of the merger consideration would provide holders of Anixter common stock with an additional premium if the value of WESCO's common stock increases to more than $58.88 per share at the time of merger and would provide holders of Anixter common stock with the opportunity to participate in any potential enhanced equity value of the combined company resulting from expected synergies and continued operation following the merger." Proxy at 88.

36.     The Synergies Projections served as a primary reason for the Board to approve and recommend the Proposed Merger and for Financial Advisors to find the Merger Consideration "fair" to Anixter shareholders. The Synergies Projections are material as they speak squarely to the question that the Company's shareholders must answer in determining how to vote on the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Synergies Projections, Defendants present the Company's shareholders with only a part of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger.

37.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Financial Advisors and the

Board but have omitted the earlier sets of projections, the Net Income Projections, and the Synergies. These omissions render the projections, the summary of Financial Advisors' valuation analyses, and the summary of the Board's *Reasons for the Merger* included in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Financial Advisors' Fairness Opinion

38.     The Proxy describes Financial Advisors' fairness opinions and the various valuation analyses performed in support of their opinions.  Defendants concede the materiality of this information in citing Financial Advisors' fairness opinions and their valuation analyses among the "material" factors the Board considered in making its recommendation to Anixter shareholders. Proxy at 90. However, the summary of Financial Advisors' fairness opinions and analyses provided in the Proxy fail to include key inputs and assumptions underlying the analyses. Without this information, as described below, Anixter shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Financial Advisors' fairness opinions in determining how to vote on the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Anixter's shareholders.

39.     In summarizing each of the Financial Advisors *Discounted Cash Flow* Analyses, the Proxy fails to disclose the following key information used in the analyses: (i) the actual after-tax unlevered free cash flows utilized; (ii) the inputs and assumptions (including the values of the company-specific WACC/CAPM components listed generally) underlying the discount rate ranges used for each analysis; and (iii) the actual terminal values calculated for each analysis.

40.     These key inputs are material to Anixter shareholders, and their omission renders the summaries of the *Discounted Cash Flow* Analyses incomplete and misleading. As a highly-

respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

41.     Without the above-omitted information Anixter shareholders are misled as to the reasonableness or reliability of Financial Advisors analyses, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Discounted Cash Flow* Analyses included in the Proxy misleading.

42.     Next, in summarizing the Wall Street research analysts price targets Centerview reviewed, the Proxy omits the individual price targets observed; instead, only providing a range of the price targets: $73-$103 for Anixter and $45-$88 for Wesco. A fair summary requires the disclosure of the individual targets. Merely providing the range without any further information is insufficient, as shareholders are unable to assess whether the Proxy summarized fairly, or, instead,

summarized in order to present the Merger Consideration in the most favorable light. This is especially true here given the breadth of the price targets provided. The disclosure here is insufficient and renders the summaries misleadingly incomplete.

<u>Wells Fargo's Conflicts of Interest</u>

43.     The Proxy fails to disclose the compensation Wells Fargo received or expects to receive by acting as an agent and a lender to one or more of the credit facilities of Anixter, WESCO and certain of its affiliates. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor issuing a fairness opinion and the subject company for that fairness opinion is required pursuant to 17 C.F.R. § 229.1015(b)(4). Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have.

44.     On page 134 the Proxy states that within the past two years "Wells Fargo Securities or its affiliates are also an agent and a lender to one or more of the credit facilities of Anixter, WESCO and certain of its affiliates." Yet, inexplicably, the Proxy fails to the amount of the of the fees Wells Fargo received or expects to receive. This omission flies in the face of the disclosure requirements of the Exchange Act and provides a misleadingly incomplete summary of Wells Fargo's conflicts of interest. This is especially true here given the fact that Wells Fargo is a lender to the buyer Wesco, could stand to make millions from the $1.2 *billion* in debt financing associated with the Proposed Merger, and thus, might possess interests that diverge

materially from Anixter shareholders. Therefore, the omission of the above information renders the statements provided on page 113 of the Proxy, and potentially the Wells Fargo's fairness opinion, misleadingly incomplete, and in violation of Item 1015.

45.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements

therein not false or misleading." 17 C.F.R. § 240.14a-9.

49.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015.

50.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

51.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.   Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Anixter, Wesco, and the combined company; (ii) the valuation analyses performed by Financial Advisors in support of their fairness opinion; and (iii) Wells Fargo's conflicts of interest.

52.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so

without extraordinary effort.

53.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Financial Advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Financial Advisors, as well as their fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Financial Advisors' analyses in connection with their receipt of the fairness opinion, question Financial Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were

required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

55. Anixter is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

56. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Anixter's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Anixter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

61.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64.     Plaintiff has no adequate remedy at law.  Only through the exercise of this

Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Anixter shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 13, 2020

**MONTEVERDE & ASSOCIATES PC**

  _/s/ Juan E. Monteverde_
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*